Tara Malek, ISB No. 8709
Jillian H. Caires, ISB No. 9130
Katie L. Daniel, ISB No. 10473
Smith + Malek, PLLC
601 E. Front Ave., Ste. 304
Coeur d'Alene, ID 83814
Tel:    208-215-2411
Fax:    208-215-2416
Email: tara@smithmalek.com
        jillian@smithmalek.com
        katie@smithmalek.com

*Attorneys for the Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NICHOLE JAMES and HEMENE JAMES, wife and husband,<br><br>    Plaintiffs,<br><br>vs.<br><br>KOOTENAI COUNTY, a political subdivision of the State of Idaho, KOOTENAI COUNTY CORONER'S OFFICE, a department of Kootenai County, and WARREN KEENE, in his individual and official capacity as KOOTENAI COUNTY CORONER,<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL REQUESTED** |

## INTRODUCTORY STATEMENT

1.      This is a civil rights action pursuant to 42 U.S.C. § 1983, filed by Plaintiffs for

violations of religious freedoms. Plaintiffs also allege claims under Idaho common law:

**COMPLAINT FOR DAMAGES - Page 1**

negligent infliction of emotional distress, intentional infliction of emotional distress, and injunctive relief.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiffs' claim of violations of federal constitutional rights pursuant to 42 U.S.C. § 1983. This action is authorized and instituted pursuant to 42 U.S.C. § 1983.

3.      This Court has jurisdiction over Plaintiffs' state law claims set forth in this Complaint, pursuant to supplemental jurisdiction to hear related state law claims under 28 U.S.C. 1367(a). Both federal and state claims alleged herein arose from a common nucleus of operative facts, the state actions are so related to the federal claims that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

4.      Actions complained of herein took place within the jurisdiction of the United States District Court, District of Idaho, in that the Defendant Warren Keene resides in Idaho and Plaintiffs' claims for relief arose in this District. Accordingly, venue in this judicial district is proper under 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff, NICHOLE JAMES ("Nicky"), is an enrolled member of the Coeur d'Alene Tribe, a federally recognized Indian Tribe and a sovereign government. Nicky resides within the boundaries of the Coeur d'Alene Tribal Reservation, which is within the boundaries of the state of Idaho. Nicky is the natural mother of Olivia Pakootas ("Olivia"), an enrolled member of the Coeur d'Alene Tribe.

COMPLAINT FOR DAMAGES - Page 2

6. Plaintiff, HEMENE JAMES ("Hemene"), is an enrolled member of the Coeur d'Alene Tribe, a federally recognized Indian Tribe and a sovereign government. Hemene resides within the boundaries of the Coeur d'Alene Tribal Reservation, which is within the boundaries of the state of Idaho. Hemene is Olivia's step-father. Nicky and Hemene are collectively referred to herein as the "Jameses".

7. Defendant, KOOTENAI COUNTY, is a political subdivision of the State of Idaho. As a local governmental entity, Kootenai County is a suitable person under 42 U.S.C. § 1983. At all times relevant to this Complaint, Kootenai County employed the Defendant Warren Keene through the Kootenai County Coroner's office. At all times relevant to this Complaint, Defendants were acting pursuant to Kootenai County's laws, customs, and/or policies. As the employer of Defendants, Kootenai County is vicariously liable for all of the tortious and unconstitutional acts and omissions of the Defendants, committed within the course and scope of their employment.

8. Defendant, KOOTENAI COUNTY CORONER'S OFFICE ("Coroner's Office"), is a department within Kootenai County.

9. Defendant, WARREN KEENE ("Keene"), was at all times relevant hereto acting under the color of state law as an employee and elected official as the Kootenai County Coroner. Defendant Keene is sued in his individual and official capacity.

10. The Jameses served a timely tort claim notice in compliance with the Idaho Tort Claims Act.

11. The Jameses are entitled to an award of fees and costs, pursuant to 42 U.S.C. § 1988.

**COMPLAINT FOR DAMAGES - Page 3**

## FACTUAL BACKGROUND

12.     The Jameses are enrolled members of the Coeur d'Alene Tribe, residing within the boundaries of the Coeur d'Alene Tribal Reservation.

13.     At approximately 5:00 p.m. on Friday, June 1, 2018, the Jameses' daughter, Olivia, was killed in a tragic single car accident on Highway 58 within the boundaries of the Coeur d'Alene Indian Reservation in Kootenai County, Idaho.

14.     Olivia was 21 years old.

15.     Olivia was ejected from her vehicle and despite the efforts of first responders, she could not be revived. Olivia died at the scene.

16.     Olivia's death was not a result of violence and did not occur under suspicious or unknown circumstances.

17.     Following the accident, the Kootenai County Coroner's Office took possession of Olivia's body.

18.     Defendant Keene did not extract a cardiac blood draw from Olivia's body until 72 hours after her death, on June 4, 2018, and he mailed the specimen through Fedex without ice, which took three (3) more days to reach the toxicologist, NMS Labs.

19.     Defendant Keene disregarded protocol for the specimen. Specifically, he did not extract a specimen from Olivia's vitreous humor, which is necessary to obtain an accurate lab result when alcohol presence is suspected and when a body, like Olivia's, has sustained extreme trauma.

20.     In the hours and days after the Kootenai County Coroner's Office took possession of Olivia's body, the Jameses, the Coeur d'Alene Tribe, and other family members made

numerous attempts to determine the location of Olivia's body. The Jameses, the Coeur d'Alene

Tribe, and their family placed many calls to Defendant Coroner's Office and Keene, but they

were unable to reach anyone.

21.     Nearly 48 hours after Olivia's death, Nicky's brother, Francis Si John, was able to

speak with Defendant Keene.

22.     Mr. Si John specifically informed Defendant Keene that because of their religious

beliefs, the Jameses and their family objected to an autopsy and requested Olivia's body to be

returned for religious preparation and burial. The Coeur d'Alene Tribe, through its agents and

representatives, reaffirmed the Jameses' objection to an autopsy and repeatedly contacted and

requested from Defendants the return of Olivia's body to her family. Defendants repeatedly

refused the requests.

23.     Defendant Keene intentionally disregarded and rejected Olivia's family's religious

objections to an autopsy, as well as the request for Olivia's body, and indicated that he was going

to perform an autopsy first thing the following day, Monday June 4, 2018.

24.     In their time of mourning, the Jameses were required to retain counsel to enjoin

Defendants from performing an autopsy upon Olivia's body.

25.     On June 4, 2018 Nicky filed a complaint for declaratory relief, temporary

restraining order, and preliminary injunction ("2018 Complaint").

26.     The 2018 Complaint provided that, pursuant to Idaho Code § 19-4301C,

Defendants were required to return Olivia's body to her next of kin for funeral preparation.

27.     Defendants continued to dismiss the Jameses' religious opposition to an autopsy

by filing an Answer and Counterclaim to the 2018 Complaint denying the allegations and further

requesting that an autopsy be performed. Keene also filed a declaration dismissing the religious beliefs and opposition.

28.     On June 4, 2018, Defendants were restrained from performing an autopsy upon Olivia pending a hearing which was scheduled to take place on June 7, 2018.

29.     On the evening of June 4, 2018, the Jameses, action upon the Court order, arrived at the English Funeral Home to recover their daughter's body.

30.     Just prior to the Jameses' arrival, Defendant Keene arrived and sealed Olivia's body in a bag with evidence tape and left strict instructions that criminal penalties would ensue if the bag was opened.

31.     On June 5, 2018, Nicky and Defendant Keene filed a stipulated motion to dismiss providing that no autopsy would be performed and Olivia's body would be immediately released to Jameses for funeral preparations.

32.     By the time Defendant Keene ultimately released Olivia's body to her family, severe bruising and disfigurement had occurred which could have been avoided had he complied with the Jameses' wishes pursuant to their religious beliefs.

33.     The Jameses suffered severe emotional distress because their religious beliefs and desire to prepare their daughter for burial were intentionally and negligently disregarded by Defendants.

34.     Plaintiffs hold a religious belief that when a member of their family dies in a sudden, tragic manner the decedent's soul is still wandering at the location of the death and therefore, they do not leave the body or the spirit alone. Instead, family members keep watch

**COMPLAINT FOR DAMAGES - Page 6**

over the body from the time of death to burial in order to assist in the decedent's soul's passage into the afterlife which is referred to as the "journey across the creek".

35.     Following a death of a family member, Plaintiffs and their  family engage in the following religious practices and traditions:

    a.  The burial and funeral ceremony begins at the site of death. The surviving family members gather at the site of the death to pray, sing traditional songs, and bless the area.

    b.  The surviving family members take all personal belongings belonging to the decedent from the death site. They dig up any earth with blood or hair, pick up jewelry and clothing piece, and collect other remains of the decedent. Those remains are placed in a buckskin bag that is placed with the body and is ultimately buried with the decedent.

    c.  The day following the death, the family begins to prepare the body for burial.

    d.  The body is embalmed first.

    e.  The women in the family then wash the decedent's hair and body with rose water and braid the decedent's hair.

    f.  The women in the family dress the decedent in a traditional wing dress and moccasins.

    g.  The women in the family place with the body huckleberries, traditional roots, other significant items gathered during the decedent's life. The women place a hunting knife in a yarn belt on the body.

**COMPLAINT FOR DAMAGES - Page 7**

h. The body is then transported to the family home for a family wake. The family prays and invites family members to visit. A midnight dinner is held later that evening.

i. The family then prepares for a community wake in the Long House. Prior to the ceremony in the Long House, the pall bearers go to the sweat lodge and purify their bodies and smudge their children with ashes.

j. A community wake is held with traditional Catholic songs and prayers as well as traditional tribal songs.

k. The next day, songs and prayers in the Coeur d'Alene language are sung and a mass is held.

l. Finally, the family transports the body for burial at a cemetery. Burial is to be done within three days of the decedent's death.

36. Defendants' extreme actions deprived Plaintiffs of their ability to practice their religious traditions of praying over Olivia, preparing Olivia's body for burial, and the ceremonial family night where Olivia's body should have laid in state at the family home.

37. Defendants' actions also deprived the Jameses from staying with Olivia's body from the site of her death until the time she was buried.

38. Defendants' extreme actions deprived the Jameses of their ability to prepare Olivia's body for burial for more than 5 (five) days after her death.

39. Because of Defendants' conduct the family was unable to conduct the ceremonies of bringing the body to the home of her mother, Nicky, for a final night with the family.

40.     The delays caused by Defendants forced Plaintiffs to condense their religious traditions.

41.     Defendants' extreme actions deprived the Jameses from providing Olivia with an appropriate burial service according to her religious beliefs because more than 3 (three) days had passed since her death.

42.     The Jameses continue to suffer from emotional distress over their concerns that Olivia's soul was lost and wandering afraid and alone in the days following Olivia's death, due to the fact that they were denied possession of her body and their religious practice to stay with her body from the site of death to her final resting place.

## FIRST CLAIM FOR RELIEF: RELIGIOUS DISCRIMINATION

### 42 U.S.C. § 1983: Violation of the 1st and 14th Amendments Against Defendants

43.     Plaintiffs incorporate by reference paragraphs 1 through 42 as though fully set forth herein.

44.     The wrongful conduct of Defendants Kootenai County, the Coroner's office, and Keene constitute violations under the color of state law and 42 U.S.C. § 1983, in that with deliberate and callous indifference to a known right, Defendants deprived the Jameses of their rights, privileges and immunities secured by the Constitution of the United States.

45.     The Jameses are entitled to practice their religious beliefs and refuse an autopsy based upon those beliefs.

46.     The acts and omissions of Defendants in refusing to provide the Jameses with Olivia's body for burial trampled upon the Jameses' religious freedoms and violated the

**COMPLAINT FOR DAMAGES - Page 9**

requirements of the 1st and 14th Amendment rights held by the Jameses to exercise religious beliefs free from racial discrimination.

47.    The specific actions of Defendants, individually and in concert with each other, alleged to be violations of Jameses' protected rights are more particularly set forth below:

a.    Defendants insisted upon an autopsy when Olivia's death did not occur under suspicious or unknown circumstances;

b.    Defendants refused to provide Olivia's body within 24 hours of being notified as required by Idaho Code;

c.    Defendants knew, or should have known, that refusal to provide Olivia's body to her family would result in severe emotional distress;

d.    Defendant Keene did not attempt to reconcile the Jameses' religious beliefs with policies and procedures;

e.    Defendants knew of the Jameses' religious beliefs and opposition to an autopsy and insisted upon one in direct violation of their religious views;

f.    Defendants intentionally sealed Olivia's body and further deprived the Jameses' of their ability to exercise their religious practices; and

g.    By refusing to return Olivia's body to the Jameses, Defendants intentionally denied the Jameses of exercising their religious practices related to preparation of Olivia's body for burial and preparing her to cross over the creek to join her ancestors.

48.     All Defendants' conduct was well defined by law and each Defendant knew, or reasonably should have known, that their conduct was not only well below the standard prescribed by law, but was illegal per se.

49.     As a result of the violations of the Constitutional standards set forth herein, the Jameses were entitled to Olivia's body within 24 hours of notifying the Coroner's Office and were forced to retain attorneys and file a restraining order to force Defendants to release Olivia's body to the family and preclude Defendants from performing an autopsy.

50.     Based upon the foregoing, the Jameses have suffered emotional and mental trauma. The extent of Plaintiffs' damages will be more fully proven at trial.

51.     Plaintiffs were required to hire attorneys to represent them in this matter and are thus entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## SUPPLEMENTAL STATE CLAIMS

## SECOND CLAIM FOR RELIEF: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

52.     Plaintiffs incorporate by reference paragraphs 1 through 51 as though fully set forth herein.

53.     Defendants Kootenai County and the Coroner's Office are liable for damages arising out of the intentional or otherwise wrongful acts or omissions of their employees acting in the course and scope of their employment.

54.     Defendant Keene was at all times relevant hereto acting in the course and scope of his employment.

**COMPLAINT FOR DAMAGES - Page 11**

55. Defendant Keene's actions of knowingly refusing to release Olivia's body despite requests from Olivia's family and the Coeur d'Alene Tribal government, and/or unreasonably insisting upon an autopsy, were intentional, extreme, and outrageous.

56. As a result of Keene's intentional, extreme, and outrageous actions, the Jameses suffered severe emotional distress.

57. Defendants Kootenai County, Coroner's Office, and Keene are liable for the damage they caused, in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

58. Plaintiffs incorporate by reference paragraphs 1 through 57 as though fully set forth herein.

59. Defendants are liable for damages arising out of the negligent or otherwise wrongful acts or omissions of their employees acting in the course and scope of their employment.

60. Defendant Keene was at all times relevant hereto acting in the course and scope of his employment.

61. Defendant Keene is required by law to exercise reasonable care in performing the daily function of his capacity as Kootenai County Coroner.

62. Defendant Keene breached that duty by negligently refusing to acquiesce to the requests from Olivia's family and the Coeur d'Alene Tribal government for the return of Olivia's body without an autopsy based upon religious reasons.

63.     Defendants' refusal to provide Olivia's body to her family upon request and notification and Defendants' insistence on an unnecessary autopsy, is a direct and actual cause of Jameses' injury.

64.     The Jameses suffered severe emotional distress and mental trauma based upon Defendant Keene's refusal to deliver Olivia's body for burial, steadfast insistence upon an autopsy against the express wishes of the Jameses, and disregard of the Jameses' affiliation as Coeur d'Alene Tribal members.

65.     Defendants Kootenai County, Coroner's Office, and Keene are liable for the damage they caused, in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF: INJUNCTIVE RELIEF

66.     Plaintiffs incorporate by reference paragraphs 1 through 65 as though fully set forth herein.

67.     Defendant Keene was at all times relevant hereto acting in the course and scope of his employment.

68.     Defendant Keene is required by law to exercise reasonable care in performing the daily function of his capacity as Kootenai County Coroner.

69.     Defendant Keene was negligent by failing to follow the policies and procedures of Defendant Coroner's Office and the standards of reasonable care, which directly caused the toxicologist report to test positive for ethanol.

70.     Defendant Keene amended Olivia's death certificate to state intoxication as a significant condition contributing to death.

**COMPLAINT FOR DAMAGES - Page 13**

71.     Olivia was not intoxicated at the time of death and Defendant Keene should remove intoxication as a significant cause of death from the death certificate.

72.     Defendants Kootenai County, Coroner's Office, and Keene are liable for the damage they caused, in an amount to be determined at trial.

## JURY DEMAND

Plaintiffs demand a jury trial on all questions of fact or combined questions of law and fact raised by this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs pray for judgment against Defendants as follows:

A.     On all claims for relief, Plaintiffs pray for judgment finding that their protected constitutional rights were violated;

B.     Findings that Defendants violated Plaintiffs' right to religious freedom and caused severe emotional distress;

C.     For general and specific damages against all Defendants in an amount to be determined at trial;

D.     For intentional infliction of emotional distress damages, negligent infliction of emotional distress damages, and all other damages available under state and federal law;

E.     For injunctive relief requiring Defendants to amend Olivia Pakootas' death certificate to remove intoxication as a significant factor in the cause of death;

F.     An award of all other damages as is just and according to the proof;

G.     An award of Plaintiffs' reasonable attorney fees and costs against all Defendants; and

H.     For such other and further relief as the Court deems just and proper.

DATED this 22nd day of November, 2019.


                                           SMITH + MALEK, PLLC


                                           _____
                                           JILLIAN H. CAIRES, ISB #9130
                                           Attorneys for Plaintiffs